Mario Pittoni, J.
The plaintiff has brought this action for a judgment declaring the Zoning Ordinance of the Town of North Hempstead unconstitutional and void insofar as it restricts the use of his property to one-family residences and other uses, and prohibits the use of his property for multiple dwelling residential purposes; and also to enjoin the Town Board from enforcing the zoning ordinance insofar as it affects the plaintiff’s property.
The property, located in the Port Washington area, is an irregular plot, 400.14 feet on the north, 806.65 feet on the east, 213.31 feet on the south, and 732 feet on the west.
The property is a wooded area that slopes in an irregular, up and down, hilly fashion. Its highest point is 155 feet above sea level, and the lowest is 85 feet. However, whereas the highest point, or 155 feet, is in the northwest corner, the lowest, *33 or 85 feet, is at least 500 feet away and on the southeast side. It is unnecessary to give a further word description; plaintiff’s Exhibit 3 shows in detail the topography of the property.
A part of the property, approximately one quarter of an acre in the northeast corner, is zoned Business “ B ”. Another part, approximately three quarters of an acre in the northwest corner, is zoned Residence “ C ”; and the balance, approximately 4.6 acres, is zoned Residence “ B ”.
The property, except for a very small strip which is zoned Business “ B ”, is bounded on the north by a built-up one-family residence area, on the east by the Long Island Railroad tracks and unimproved Residence “ C ” area, and to the south and west by the Piándome Golf Course and the Incorporated Village of Piándome Manor. Further south is the Incorporated Village of Flower Hill. There are no multiple dwellings or similar structures in the vicinity of the property.

1.

The first defense raised by the town is that the ordinance permits a variance and modification of the ordinance, as it affects the property, upon application to and by the Town Board of Zoning and Appeals (§§ 174.0, 174.6-8), an administrative body; and that the present action, attacking the constitutionality of the ordinance, must be dismissed for failure by the plaintiff to exhaust his administrative remedies. But such a procedure by the plaintiff would assume the constitutionality of the ordinance and would mean a plea by him to the administrative body to exercise its grace and discretion in favor of his application for a variance of the effect of the ordinance upon his property. The plaintiff’s position, however, is to the contrary; he contends not that he requests a variance of a constitutional and valid ordinance, but that the ordinance is invalid and unconstitutional as applied to him. Be that as it may, the question now appears settled by the New York Court of Appeals in Levitt v. Incorf orated Vil. of Sands Point (6 N Y 2d 269, 273) and Vernon Park Realty v. City of Mount Vernon (307 N. Y. 493, 500-501).
In the Levitt case the court said: “We disagree, however, with the opinion of the Appellate Division insofar as it held that plaintiffs were precluded from raising the issue of confiscation by their failure to apply for a variance under the provisions of the ordinance. The theory of this action is that plaintiffs are entitled as a matter of right to a judgment declaring the unconstitutionality of the ordinance; they do not ask for the relaxation of an assumedly valid regulation (Vernon Park Realty v. City *34 of Mount Vernon, 307 N. Y. 493, 501; Dowsey v. Village of Kensington, 257 N. Y. 221, 231)
And, in the Vernon Park Realty case the court said: “ The owner’s right to attack the validity of a zoning ordinance is not waived by the circumstance that he has on a previous occasion applied for a variance. Such an application is, primarily, an appeal to the discretion of the board and, for that purpose, the validity of the ordinance is assumed but that does not operate to confer validity if, in fact, as here, the zoning ordinance is clearly confiscatory (cf. Arverne Bay Constr. Co. v. Thatcher, supra [278 N. Y. 222]). Conversely, an attack on the legality of a zoning ordinance prior to any request for variance has long been accepted as proper procedure (Dowsey v. Village of Kensington, supra [257 N. Y. 221]).”
Therefore, a prior application to the Town Board of Zoning and Appeals, an administrative body, is not a requisite to the bringing of an action to have an ordinance, a legislative act, declared unconstitutional.

2.

We shall now consider the plaintiff’s contention that the ordinance which prevents him from building multiple dwellings on his property is unconstitutional and void.
It is fundamental that zoning is a legislative function, and that a zoning or rezoning ordinance, or an amendment thereto, or a determination refusing to rezone, is presumed constitutional and valid. The burden of proving such a legislative act unconstitutional or otherwise invalid is upon the assailant. If the validity of the ordinance is fairly debatable, the judgment of the legislative body is conclusive and beyond interference by the courts (Gregory v. Incorporated Vil. of Garden City, 18 Misc 2d 478, 484; Linn v. Town of Hempstead, 10 Misc 2d 774, 775, 782; Rodgers v. Village of Tarrytown, 302 N. Y. 115, 121; Shepard v. Village of Skaneateles, 300 N. Y. 115, 118). The Court of Appeals has also said that the rule as to burden of proof to establish an ordinance unconstitutional is “ beyond a reasonable doubt * * * ‘ it is only as a last resort ’ that courts strike down legislative enactments on the ground of unconstitutionality.” (Wiggins v. Town of Somers, 4 N Y 2d 215, 218-219.) Furthermore, to successfully attack the validity of this zoning ordinance, the assailant owner must show that the ordinance so restricts the use of his property that it cannot be used for any reasonable purpose (Arverne Bay Constr. Co. v. Thatcher, 278 N. Y. 222).
*35 Beside documentary evidence such as maps, diagrams and photos, the plaintiff produced several expert witnesses. One of them, Jacob Bohn, a land surveyor and planner, testified to the hilly topography of the property, and submitted plans for one-family residences that could be built on the property, and also plans of proposed multiple dwellings. He submitted a plan for one-family residences, testified as an expert that an attempt to develop the property with one-family residences would result in a financial loss, and that development of the property with multiple dwellings would be financially gainful. His testimony was corroborated by James Matthews, an engineer, appraiser and real estate expert, and by George Silverberg, an engineer and builder. They also believed that the best development for the property would be by multiple dwellings. All three agreed that the main difficulty with developing the property with one-family residences was its topography.
Another witness called by the plaintiff was George Kramer, a real estate broker and a long-time chairman of the Mineóla Planning & Zoning Commission, and also a long-time chairman of the Town of North Hempstead Board of Zoning and Appeals. His testimony was that in 1953. he felt that the property should have been utilized with garden apartments, but that he was now of a different opinion. He also said that the property could be used for one-family residences. His testimony did not strengthen the plaintiff’s case; in fact, is damaged it.
The town produced as one of its witnesses Frederick Reuter, a planning and zoning expert, who testified that in his opinion the present zoning of the property was part of the town’s comprehensive zoning plan and that it could be developed profitably with one-family residences. He felt, as did the others, that the only difficulty involved was the topography of the property. However, he said that this could be taken care of by grading, and he saw no difficulty in developing access to the residences in the area.
Another witness called by the town was Myers E. Baker, a real estate broker, appraiser and builder. He offered a plan showing how the property could be developed with one-family residences at a profit, and said that the topography of the property lent itself to one-family residences. He further stated that in his opinion the property, as presently zoned, was worth at least $91,500 and that it could be sold at that price, in the raw . state, within a month.
On the testimony of these witnesses it cannot be said that the plaintiff has borne his burden of proof, beyond fair debate *36 or beyond reasonable doubt, to establish that the property cannot be reasonably utilized at a profit under the present zoning. For one thing, the plaintiff’s witnesses are not entitled to more credence or more weight than those for the Town; they have shown no greater qualifications and their opinions are not surrounded or supported by facts or reasons which could sway the court in their favor. Furthermore, their opinions seemed to surround one proposed site plan for one-family residences (Pltf. Ex. 18), and no other possibilities were developed and eliminated in a profit and loss sense. Against this was the proposed site plan for one-family residences (Deft. Ex. U) presented by Mr. Baker on behalf of the town. This plan appears just as reasonable as that of the plaintiff’s, and Mr. Baker said that his plan could be developed at a profit. Furthermore, no evidence as to the purchase or acquiring price, or as to the value of the property under the present zoning, was offered by the plaintiff.
Furthermore, an examination of certain photographs (Pltf. Ex. 4, Deft. Exs. D, J, K, L, M and N) demonstrates that other one-family residences have been built in nearby areas on similar irregular, up and down, hilly and sloping land.
What the plaintiff may have proved is the ‘ ‘ Highest and Best Use Method of Improving Property” (Pltf. Ex. 25). He has not proved that the property cannot be used for any reasonable purpose under the present zoning ordinance. The fact that the value of the property as presently zoned may be substantially less than it would be if multiple dwellings were permitted is not a convincing factor in respect to the constitutionality and validity of this zoning ordinance.
In Shepard v. Village of Skaneateles (300 N. Y. 115, 118-120, supra) the court said: 1 ‘ Zoning laws * * * necessarily entail hardships and difficulties for some individual owners. * * * A possible depreciation in value is not of too great significance, for the pecuniary profits of an individual are secondary to its public welfare. * * * Either plaintiffs’ property or the land near it would suffer depending on the board’s action, and the board could properly find that the loss sustained by plaintiffs would be offset by the gain to the community in general.” In Rodgers v. Village of Tarrytown (302 N. Y. 115, 126, supra) the court said: ‘ ‘ While hardships may be imposed on this or that owner, ‘ cardinal is the principle that what is best for the body politic in the long run must prevail over the interests of particular individuals. ’ ” And in Matter of Wulfsohn v. Burden (241 N. Y. 288, 302) the court said: “ It is not an effective argument against these ordinances, if otherwise valid, that they limit the use and may depreciate the value *37 of appellant’s premises. * * * the general welfare of the public is superior in importance to the pecuniary profits of the individual. ’ ’
The present decision is not in conflict with Hyde v. Incorporated Vil. of Baxter Estates (140 N. Y. S. 2d 890, affd. 2 A D 2d 889, affd. 3 N Y 2d 873). For one thing, it is difficult to compare the properties involved and the testimony of the expert witnesses; and, more important, in the Hyde case the municipality had recognized the property as fit for multiple dwellings and had zoned the property to permit them there for many years. It then amended the long-standing zoning ordinance to preclude the very garden apartments which it had previously permitted for years, all to the financial detriment of the owner. Mr. Justice Hogan said in that case at page 895: “ There is no magic about zoning whereby it remains static and thereby affords permanent rules and regulations for all time. It must be flexible, but before changed by the legislature close scrutiny must be given and just cause shown.” Clearly, close scrutiny was not given or just cause shown by the Village of Baxter Estates for the sudden change or 1 ‘ up-zoning ’ ’ in the Hyde case. In the present ease, however, a long-standing zoning ordinance, part of a comprehensive plan, is attacked on the ground that it is null and void and that the property is entitled to a more profitable use than permitted under the present ordinance.
It may be that garden apartments will make the area more useful, more profitable and perhaps more attractive than one-family residences. In fact, the court can see no aesthetic or other objections to garden apartments. Perhaps an application for a variance based on topographical hindrances or difficulties may be acted upon favorably by the town. Perhaps too, now that the town’s position on the issue of constitutionality has been upheld in this decision, the town may look upon an application for a variance on the basis of topography more sympathetically. Be that as it may, in the present action wherein the validity of the ordinance is attacked as unconstitutional and the issue is, at best, fairly debatable, the court may not substitute its judgment for that of the town.
The complaint is dismissed.
This is the decision of the court pursuant to section 440 of the Civil Practice Act.
Submit judgment.