No. 12612

IN THE SUPREME COURT OF THE STATE OF MONTANA

1974

THOMAS PAUL LOWE, MARTHA L. ONISHUK
and FREDERICK J. LOWE,

Plaintiffs and Appellants,

-vs-

CITY OF MISSOULA, a Municipal Corporation,

Defendant and Respondents.

Appeal from: District Court of the Fourth Judicial District,
Honorable Edward Dussault, Judge presiding.

Counsel of Record:

For Appellants:

Garlington, Lohn & Robinson, Missoula, Montana
William Evan Jones argued, Missoula, Montana

For Respondents:

Jack K. Morton argued, Missoula, Montana
Victor Valgenti and Fred C. Root, Missoula, Montana

Submitted: May 21, 1974

Decided: JUL 22 1974

Filed: JUL 22 1974

_Thomas J. Kearney_
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Plaintiffs appeal from a judgment of the district court upholding action taken by the Missoula City Council adopting a rezoning ordinance changing a "B-Residential District" to "RR-1 Restricted One Family Residential District". In arriving at its judgment the district court considered evidence before the City Council and took additional evidence.

The property in question consists of 5.8 acres of land located on the southeast slope of Water Works Hill in the city of Missoula. The original comprehensive zoning map for the city of Missoula was adopted on March 4, 1968, and this particular 5.8 acres lies just outside the zoned area. It had been traditionally zoned "B" residential. Across the road, and within the comprehensive zoned area, the area is zoned for single family homes. The 5.8 acres in question have been owned by the Lowe family for approximately 40 years.

Testimony indicated the property has certain topographical and other conditions which have a direct bearing on its development. One of the most important of these conditions is the fact the property is partially on a hillside. The zoning plan for the city of Missoula, adopted in 1968, apparently meant no change in the zoning of the 5.8 acres for they were left out of the plan.

In March 1973, certain property owners submitted to the city of Missoula, through its zoning commission, a petition to rezone the Lowe land from "B-1" to "RR-1", restricted one family residential. The zoning commission recommended the petition be granted, and on March 19, 1973 the City Council voted to adopt the petition.

The owners of the 5.8 acres desire to build an apartment complex on the tract and at the time they appeared before the district court they voluntarily agreed that the rigid controls imposed by the city zoning classification "R-IV" might be imposed on the acreage. The district court upheld the City Council.

Two issues are raised on appeal:

1. Did the district court abuse its discretion in upholding the City Council's approval of rezoning ordinance No. 1549 of March 19, 1973?

2. Did the evidence before the district court support a court order upholding rezoning ordinance No. 1549?

Both sides agree that unless there can be a showing of an abuse of discretion by the trial court the judgment should be sustained. We find there was such a mistake of fact that it amounted to an abuse of discretion on the part of the trial court requiring reversal.

We are guided by the provisions of section 11-2703, R.C.M. 1947:

> "Such regulations shall be made in accordance with a comprehensive plan and designed to lessen congestion in the streets; to secure safety from fire, panic and other dangers; to promote health and the general welfare; to provide adequate light and air; to prevent the over-crowding of land; to avoid undue concentration of population; to facilitate the adequate provision of transportation, water, sewerage, schools, parks, and other public requirements. Such regulations shall be made with reasonable consideration, among other things, to the character of the district and its peculiar suitability for particular uses, and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout such municipality."

This section is a part of Chapter 27, Title 11, of the Montana Codes of 1947, wherein the legislature provided the steps a city council must follow in its regulation of land. Counsel for the land owners subdivides section 11-2703 into 12 tests and then suggests that the testimony before the City Council and the district court fails to meet these tests, which are:

1. Whether the new zoning was designed in accordance with the comprehensive plan.

2. Whether the new zoning was designed to lessen congestion in the streets.

3. Whether the new zoning will secure safety from fire, panic and other dangers.

4. Whether the new zoning will promote health and general welfare.

5. Whether the new zoning will provide adequate light and air.

6. Whether the new zoning will prevent the overcrowding of land.

7. Whether the new zoning will avoid undue concentration of population.

8. Whether the new zoning will facilitate the adequate provision of transportation, water, sewerage, schools, parks and other public requirements.

9. Whether the new zoning gives reasonable consideration to the character of the district.

10. Whether the new zoning gives consideration to peculiar suitability of the property for particular uses.

11. Whether the new zoning was adopted with a view to conserving the value of buildings.

12. Whether the new zoning will encourage the most appropriate use of land throughout such municipality.

In summarizing the evidence introduced at the City Council and in the district court we note the record is so lacking in fact information that the action on the part of the City Council and the district court could be said to have been based on mistakes of fact, thereby constituting an abuse of discretion.

Taking the evidence introduced and weighing its merit under the tests above set forth we find that:

Test 1. Fails because the land is outside the area of the comprehensive plan, so could not be included.

Test 2. The testimony in regard to traffic clearly fails to indicate that the new zoning would lessen congestion or that the proposed complex would cause a mass dumping of traffic into the area.

Test 3. The evidence indicates the proposed rezoning is not necessary to protect adequate water, safety and fire protections for the area.

Test 4. It cannot be argued that the proposed rezoning would promote the health and welfare of the area. The health and welfare of the area would be promoted if a sewer were available and the new apartment complex plans to bring a sewer line to the complex, into an area where the homes are on septic tanks.

Test 5. The record lacks any evidence showing the proposed rezoning is necessary to protect adequate light and air.

Test 6. This test is whether the proposed rezoning will prevent the overcrowding of the land. Testimony indicated the city officials believed multiple dwelling complexes were permissible in the area and the city planner indicated if the density was reasonable the subject site would accommodate the complex. In view of the fact plaintiffs agreed to abide by the density regulations, there can be no reason to rezone here to prevent land crowding.

Test 7. There was no evidence that the adoption of the rezoning would avoid an undue concentration of people in the area.

Test 8. The rezoning would in no way change or reduce the necessary public facilities, such as transportation, water, sewerage, schools, parks, etc. With respect to the objection made that the building of an apartment complex, as here proposed, would overtax the area's public facilities, we can only comment that progress and growth cannot be stopped by the lack of facilities. It is putting the cart before the horse to argue that because there are not enough facilities in a particular area it cannot grow.

Test 9. This test raises the question of whether the rezoning gives reasonable consideration to the character of the area. As of now the 5.8 acre tract has nothing on it but grass. The statute requires only that rezoning give consideration to the district, not the area. While there are single family residences in the district there are also many vacant areas plus areas that are zone "B residence". There was no showing that rezoning was necessary to protect the character of the district.

Test 10. Whether the rezoning gives consideration to peculiar suitability of the property for particular uses. The record indicates two architects, plus one of plaintiffs--a land planner by profession--testified the 5.8 acre tract was suitable for an apartment complex.

Test 11. This test is whether the rezoning was adopted with a view to conserving the value of buildings. This is not applicable, nor need it be considered, due to the fact the land has no buildings. Further there is no testimony indicating that the single residence homes in the area would be damaged by the apartment complex.

Test 12. Will the new zoning encourage the most appropriate use of land throughout such municipality? This raises a policy question of whether the community needs an apartment complex at this particular site. If there is a need then error was made to rezone it into single residential homes. Evidence was introduced in the form of the "Mayor's Advisory Council on Housing Report" which indicated a continual growth in Missoula and a need to replace substandard units. The area in question is only a two minute drive and an eight minute walk from the heart of the central business district of Missoula. Viewing all of the testimony, we find that rezoning the area was an abuse of discretion.

The city argues that under Montana's section 11-2703, R.C.M. 1947, it cannot be charged with an abuse of discretion if the record indicates the City Council and the district court had before them reasonable evidence or testimony upon which they could find that one or more of the purposes of the enabling statute had been accomplished. Further, that the matter was largely within the council's legislative authority and there is a presumption that it had investigated and found the conditions to be such that the legislation which it enacted was appropriate and that the courts must hold that the action of the legislative body (the City Council) is valid.

- 6 -

While neither the trial court nor this Court can substitute its discretion for that of the City Council, the judiciary does have the power to find whether or not there has been an abuse of discretion. Freeman v. Board of Adjustment, 97 Mont. 342, 34 P.2d 534. There is under Montana statutes and case law a sound distinction between "zoning" and the act of "rezoning" or granting or refusing a variance. The former constitutes a legislative act while the latter is more of an administrative or quasi-judicial act in applying provisions of existing ordinance or law. In such application the exercise of sound discretion is limited by the provisions of the statute, including such standards as are set forth therein. Low v. Town of Madison, 135 Conn. 1, 60 A.2d 774.

Applying Montana's case law to the problem of considering the exercising of sound discretion the case of Fulmer v. Board of Railroad Comm'rs, 96 Mont. 22, 39, 28 P.2d 849, discusses the problem thoroughly. While <u>Fulmer</u> involves the Railroad Commission's findings in a rate case what is said there is applicable to the actions of a city council:

> "It must not be understood that the courts have no function at all in such matters. Such a view would nullify the statutory provisions for a judicial review of the action of the board. The courts have a measure of judicial authority in matters such as the one under consideration. The law specifically authorizes such review of the acts of the board. The review, however, has been held by this court to include only the following questions: (1) Did the Board act beyond the power which it could constitutionally exercise? (2) Did the Board act beyond its statutory power? and (3) Did the Board base its action upon a mistake of law? This Court has qualified the above rule by the following language: 'But questions of fact may be involved in the determination of questions of law, so that an order, regular on its face, may be set aside * * * if the Commission acted so arbitrarily and unjustly * * * or without evidence to support it; or if the authority therein involved has been executed in such an unreasonable manner * * *.' [Billings Utility Co. v. Public Service Com., 62 Mont. 21, 203 P. 366]

> "The function of the court in these matters should not be minimized. Without some supervision, efficiency would often be sacrificed to expendiency, and administration would be lacking in uniformity and equity * * *. While this court cannot function for the board, it can require that it proceed in reasonable accord with statutory requirements and established principles of practice."

State ex rel. Olsen v. Public Service Comm., 131 Mont. 272, 309 P. 2d 1035; C.M. & St.P.Ry.Co. v. Board of R.R.Comm., 126 Mont. 568, 255 P.2d 346; Langen v. Grazing Dist., 125 Mont. 302, 234 P.2d 467.

This Court not only has authority to review the record made before the City Council plus the new testimony, but also has the responsibility to provide supervision in accord with established principles of practice. Where the information upon which the City Council and the district court acted is so lacking in fact and foundation, as heretofore noted, it is clearly a mistake of fact and constitutes an abuse of discretion. It is within the power of this Court to correct this mistake of fact by judicial review of the entire record.

This Court in Freeman v. Board of Adjustment, 97 Mont. 342, 355, 34 P.2d 534, restricted zoning where it imposed unjust limitations on property and deprived the owner of his property rights. The Court held:

> "Under the guise of protecting the public or advancing its interest, the state may not unduly interfere with private business or prohibit lawful occupations, or impose unreasonable or unnecessary restrictions upon them. Any law or regulation wich imposes unjust limitations upon the full use and enjoyment of property, or destroys property value or use, deprives the owner of property rights."

City of Jackson v. Bridges, 243 Miss. 646, 139 So.2d 660; Garner v. City of Carmi, 28 Ill.2d 560, 192 N.E.2d 816.

We noted in Lambros v. Missoula, 153 Mont. 20, 26, 452 P.2d 398, where a variance in a zoning order was requested:

> "Under Freeman a petition for variance must meet three criteria. The variance must not be contrary to public interest. A literal enforcement of the zoning ordinance must result in unnecessary hardship, owing to conditions unique to the property. The spirit of the ordinance must be observed, and substantial justice done."

The three criteria were not found in the trial court's order therefore error of law was committed.

Considering the volatility of problems that arise under zoning ordinances and laws regulating the use of land, we note with approval the language of the federal district court of the District of Columbia, in American University v. Prentiss, 113 F.Supp.

389, 393, affd. 214 F.2d 282, 348 U.S. 898, 99 Led 705, 75 S.Ct. 217, wherein the court held:

> "* * *Although possible impairment of property values seemed to be the main argument, very little actual evidence on the subject was produced. The testimony consisted chiefly of emotional outbursts on the part of individual homeowners, to the general effect that they had been informed by real estate experts that if the hospital were erected, the value of their property would decrease anywhere from thirty-five to fifty percent. Naturally such assertions are not evidence. * * *
>
> "It is well established that administrative agencies are not required to apply the rules of law governing admissibility of evidence. These rules are binding only on judicial tribunals. Nevertheless, the probative weight of evidence is the same irrespective of where the evidence is introduced, and must be tested by the same standards whether it is tendered to a court or to an administrative body."

In view of the mistake of facts submitted to the City Council and upon which the district court based its decision, we find such was an abuse of discretion necessitating reversal.

Judgment is reversed and the City Council is directed to set aside Ordinance No. 1549.

_____John Conway Harrison_____
Justice

We Concur:

_____Wesley Castles_____

_____Jesse L. Daley_____

_____
Justices.

Mr. Justice Frank I. Haswell, specially concurring:

I concur in the result reached by the majority, but I cannot endorse their statement of the applicable law. I would reverse, not on the ground that the city council and the district court made a mistake of fact, but because the rezoning ordinance constitutes prohibited and discriminatory "spot zoning".

Rezoning by a city council is a legislative act. Bishop v. Town of Houghton, 69 Wash.2d 786, 420 P.2d 368; 1 Anderson, American Law of Zoning, § 4.28. The courts will not interfere unless the rezoning ordinance violates the enabling statutes or the Constitution. State v. Stark, 100 Mont. 365, 52 P.2d 890; Leischner v. City of Billings, 135 Mont. 109, 337 P.2d 359. The majority opinion here, while giving lip service to the enabling statute, has misapplied the applicable standards of review, grounding the opinion on standards of review of orders of administrative boards under special statutes. The standards of review of orders of the Public Service Commission in Fulmer v. Board of R.R. Commissioners, 96 Mont. 22, 28 P.2d 849 and the standards of review of variances granted by Boards of Adjustments in Lambros v. Missoula, 153 Mont. 20, 452 P.2d 398 and Freeman v. Board of Adjustment, 97 Mont. 342, 34 P.2d 534 quoted in the majority opinion have no application to legislative acts of a city council in my opinion.

Here the ordinance rezoned one particular parcel of property out of several hundred acres on a hillside for restrictive zoning. It was not part of a comprehensive plan for the district, but was simply a response to a petition by some of the neighbors. The rezoning of a small parcel of land to the disadvantage of the owner constitutes prohibited "spot zoning" equally with singling out an isolated tract for zoning advantageous to the owner. Wolpe v. Poretsky, 8 U.S.App.D.C. 67, 154 F.2d 330; Kissinger v. City of Los Angeles, 161 Cal.App.2d 454, 327 P.2d 10; Caputo v. Board of Appeals of Somerville, 331 Mass. 547, 120 N.E.2d 753.

Here the rezoning ordinance burdened the Lowe tract far more heavily than several hundred other acres on the hillside. No consideration was given to rezoning the entire hillside. The previous zoning had been in effect for over forty years and was reviewed in 1965 when the city adopted a comprehensive plan which excluded the hillside. The "spot zoning" of the Lowe tract in 1973 was arbitrary, discriminatory and denied the owners due process and equal protection of the laws. It did not comply with the statute permitting zoning "for the purpose of promoting health, safety, morals, or the general welfare of the community" or district. Section 11-2701, R.C.M. 1947.

Justice.

- 11 -