No. 14458

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

---

ARTHUR SCHANZ and RACHEL R. SCHANZ,

Plaintiffs and Appellants,

-vs-

CITY OF BILLINGS, et al.,

Defendants and Respondents.

---

Appeal from: District Court of the Thirteenth Judicial District,
Hon. Charles Luedke, Judge presiding.

Counsel of Record:

For Appellants:

Fillner and Pitet, Billings, Montana
Russell K. Fillner argued, Billings, Montana

For Respondents:

Peterson and Hunt, Billings, Montana
K. D. Peterson argued, Billings, Montana

---

Submitted: March 16, 1979

Decided: JUN 27 1979

Filed: JUN 27 1979

_Thomas J. Kearney_
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Plaintiffs Arthur and Rachel Schanz appeal from the judgment of the District Court, Yellowstone County, which dismissed their claim that annexation by the defendants City of Billings, et al., of certain property known as the Hayes Subdivision was ineffective, dismissed their claim that the Hayes Subdivision should not have been zoned R-7200 when it was annexed, and ordered that plaintiffs' application for a zone change be heard and reconsidered in accordance with criteria set forth in this Court's decision in Lowe v. City of Missoula (1974), 165 Mont. 38, 525 P.2d 551.

Arthur Schanz has been in the construction business since 1953. In December 1971, Schanz purchased real property known as the Hayes Subdivision, comprised of twenty lots situated outside of, but contiguous to, the city limits of Billings, Montana. During construction of a four-plex apartment on the land, which began in June 1972, Schanz discovered that the City's water and sewer services would not be extended to the subdivision unless the property was annexed.

Schanz took no action on the matter for approximately one year, but in the meantime enlisted the services of a registered engineer, made arrangements with a contractor to install water and sewer lines, and continued with his construction work in the subdivision.

On July 5, 1973, the registered engineer, acting in Schanz's behalf, applied to the City for permission to extend water and sewer lines to the Hayes Subdivision. The Public Utilities Board approved the application, and on July 16,

the City Council approved the requested extensions "subject to annexation".

A request to extend city boundaries to include the Hayes Subdivision appeared on the City Council agenda on August 6, 1973, and the resolution of intent to extend the boundaries of the City of Billings was adopted the same day. Notice of the resolution was published and the matter came before the City Council for final action on September 10, 1973, resulting in an expansion of the City's boundaries to include the Hayes Subdivision.

The City Zoning Commission sent its recommended zoning classification to the City Council on September 10, the same day the resolution was passed to extend the City's boundaries. A notice of public hearing fixing October 1, 1973, as the date of hearing before the City Council was posted September 13, 1973, by the City clerk. No one appeared to speak in favor of or against the Commission's recommendation and the City Council adopted the recommendation by passage of Ordinance No. 3744 on October 1. The land on which the four-plex had been built was classified R-6000 (multi-family dwellings) and the remainder was given a R-7200 classification (single family dwellings and duplexes only).

Schanz did not attend any of the proceedings affecting the property. However, he did continue his construction activities, and by October 1973, Schanz had built or had under construction two four-plexes and three single family dwellings. When Schanz applied to the City for more building permits and was refused because of the R-7200 zoning classification, he began what was to be a continuous series of efforts to be exempted from zoning regulations.

On or before February 11, 1974, Schanz applied for a zone change to allow for construction of more four-plexes.

-3-

Persons living adjacent to the subdivision filed a protest (the subdivision is surrounded by a R-9600 classification-single family dwellings only). After failing to secure a zone change, Schanz applied for a variance. The variance was denied, and on March 3, 1975, Schanz again petitioned for a zone change. The City Council denied the zone change on April 28, 1975, reconsidered the application and denied it again on May 19, 1975. The procedure was repeated with the same result in June 1976.

This action was filed in District Court, Yellowstone County, on September 3, 1976, to have the annexation resolution declared null and void, to have the zoning classification removed, or alternatively, to secure a zone change. On July 24, 1978, the Honorable Charles Luedke entered judgment dismissing the first and second claims and ordering that the application for a zone change be reconsidered in accordance with the criteria set forth in Lowe.

On appeal, plaintiffs present three issues:

1. Can an initial zone classification be made when the notice and hearing on the matter by the City Zoning Commission and City Council came before the affected area was annexed by the City?

2. Can an initial zone classification be made when the City Zoning Commission and City Council failed to comply with the twelve-point test set forth in section 11-2703, R.C.M. 1947, now section 76-2-304 MCA, and this Court's decision in Lowe?

3. Are plaintiffs estopped from asserting that the procedure for annexing the land was fatally defective, rendering the annexation void?

The Zoning Commission for the City of Billings held a hearing on September 10, 1973, to consider the zoning

-4-

recommendation to be sent to the Billings City Council for the Hayes Subdivision. Notice of the hearing had been published August 16, 1973. Following the hearing, the Commission decided on a recommendation and sent it to the City Council. The recommendation reached the City Council approximately five (5) hours before the resolution annexing the Hayes Subdivision was passed. Plaintiffs contend this procedure violated section 7.03 of the Billings Zoning Ordinance, and Article II, Section 8 of the 1972 Montana Constitution. Section 7.03 of the zoning ordinance provides:

> "When a parcel of land lying outside the corporate limits of the City of Billings and within the Yellowstone County Zoning jurisdiction is annexed to the City of Billings, the property shall retain the classification it has in the County but will be reviewed by the City Zoning Commission and a recommendation sent to the City Council either reaffirming the County classification or change the zoning classification, within (90) ninety days of passage of the final resolution of annexation." (Emphasis added.)

Practically the same rules of construction apply to an ordinance as apply to a statute. State ex rel. Bennett v. Stow (1965), 144 Mont. 599, 399 P.2d 221. If the language of an ordinance is plain and unambiguous, it is not subject to interpretation or open to construction but must be accepted and enforced as written. Sheridan County Electric Co-op, Inc. v. Montana-Dakota Utilities Co. (1954), 128 Mont. 84, 270 P.2d 742.

Section 7.03 does not prohibit the Zoning Commission from sending a recommendation before the final resolution of annexation is passed. It merely requires that the recommendation be sent no later than ninety days after the annexation resolution is passed. There is no problem here with property being zoned prior to annexation. The annexation resolution, passed on September 10, 1973, went into effect on October 10, 1973,

pursuant to section 11-1106, R.C.M. 1947, now section 7-5-4203(1) MCA. The actual zoning ordinance was not passed until October 1, 1973, and similarly did not take effect until thirty days later, on October 30, 1973. Consequently, the Hayes Subdivision was given a zoning classification some twenty days after the property was annexed by the City of Billings. The problem here is that the City Zoning Commission transmitted its recommendation to the City Council approximately five hours before the Council acted on the annexation resolution. Section 7.03 of the zoning ordinance does not require that the recommendation be sent after the annexation resolution passes and this Court will not impose such a requirement.

Plaintiffs fail to explain how their rights under Article II, Section 8 of the 1972 Montana Constitution have been violated. Article II, Section 8 provides:

> "Right of Participation. The public has the right to expect governmental agencies to afford such reasonable opportunity for citizen participation in the operation of the agencies prior to the final decision as may be provided by law."

The City Zoning Commission published a notice of public hearing on August 16, 1973. The hearing was held on September 10, 1973. Then the City clerk of Billings published a notice of public hearing by the City Council on the subject of the Zoning Commission's recommended classification. The hearing was held on October 1, 1973 and no person attended. Plaintiffs were given a reasonable opportunity to participate and failed to do so.

On July 22, 1974, this Court decided the case of Lowe, which involved an appeal from a judgment of the District Court

-6-

upholding an ordinance passed by the Missoula City Council rezoning certain residential property. The plaintiffs challenged the adoption of the ordinance on the grounds that the ordinance had not been adopted in accordance with the provisions of section 11-2703, R.C.M. 1947.

Section 11-2703, R.C.M. 1947, now section 76-2-304 MCA sets forth guidelines a City Council must follow in its regulation of land:

> "11-2703. Purposes of act. Such regulations shall be made in accordance with a comprehensive plan and designed to lessen congestion in the streets; to secure safety from fire, panic, and other dangers; to promote health and the general welfare; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population; to facilitate the adequate provision of transportation, water, sewerage, schools, parks, and other public requirements. Such regulations shall be made with reasonable consideration, among other things, to the character of the district and its peculiar suitability for particular uses, and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout such municipality."

In Lowe, this Court concluded that the record made by the City Council and relied on by the District Court was so lacking in fact information that it could not be said that the requirements of section 11-2703 had been followed. Precisely, the Court held that the District Court had abused its discretion in upholding the zoning ordinance in disregard of the contention that statutory law had not been followed in the enactment of the ordinance.

A contention similar to that in Lowe was presented to the District Court in this case. The District Court failed to find merit in the contention however, and did not examine the City Council's record because passage of the zoning ordinance on October 1, 1973, predated the decision in Lowe. Plaintiffs seek to have the District Court's conclusion overturned for the reason that the statute providing the steps a City Council must follow in its regulation of land was in

-7-

existence long before the Lowe decision was handed down.

We agree with the plaintiffs on this point. It was not the Lowe decision that created a twelve-point test for adopting zoning ordinances. Rather, section 11-2703, originally enacted in 1929, mandated the consideration of twelve independent factors prior to the passage of any zoning ordinance.

Defendants do not dispute plaintiffs' allegation concerning the inadequacy of the record, but instead contend that, due to language in Lowe, an initial zoning classification may not be disturbed by the courts. In Lowe, we said:

> "The city argues that under Montana's section 11-2703, R.C.M. 1947, it cannot be charged with an abuse of discretion if the record indicates the City Council and the district court had before them reasonable evidence or testimony upon which they could find that one or more of the purposes of the enabling statute had been accomplished. Further, that the matter was largely within the council's legislative authority and there is a presumption that it had investigated and found the conditions to be such that the legislation which it enacted was appropriate and that the courts must hold that the action of the legislative body (the City Council) is valid.

> "While neither the trial court nor this Court can substitute its discretion for that of the City Council, the judiciary does have the power to find whether or not there has been an abuse of dis- cretion. Freeman v. Board of Adjustment, 97 Mont. 342, 34 P.2d 534. There is under Montana statutes and case law a sound distinction between "zoning" and the act of "rezoning" or granting or refusing a variance. The former constitutes a legislative act while the latter is more of an administrative or quasi-judicial act in applying provisions of existing ordinance or law. In such application the exercise of sound discretion is limited by the provisions of the statute, including such standards as are set forth therein. Low v. Town of Madison, 135 Conn. 1, 60 A.2d 774." 165 Mont. at 43.

A review of authorities reveals no elemental distinction between the act of "zoning" and the act of "rezoning". A rezoning ordinance, like a zoning ordinance, is a legislative enactment, and is entitled to the presumptions of validity and reasonableness. Sundance Hills Homeowners Association

-8-

v. Board of County Commissioners for Arapahoe County
(1975), 188 Colo. 321, 534 P.2d 1212, Smith v. Washington
County (1965), 241 Or. 380, 406 P.2d 545; Bishop v. Town
of Houghton (1966), 69 Wash.2d 786, 420 P.2d 368.   See also:
82 Am.Jur.2d Zoning and Planning §18, p. 414, and 1 Anderson
American Law of Zoning §4.28.

Although we depart here from the distinction expressed
in Lowe between the acts of zoning and rezoning, we none-
theless continue to hold that where the information upon
which a City Council and District Court act is so lacking
in fact and foundation, it is clearly unreasonable and con-
stitutes an abuse of discretion.   An ordinance, whether it
be enacted for the purpose of zoning or rezoning areas
within City boundaries, is invalid unless made in accordance
with the provisions of section 11-2703, now section 76-2-
304 MCA.   Therefore, this case must be remanded to the
District Court in order that the City Council's record of
considerations may be examined and reviewed in light of the
twelve statutory requirements of section 11-2703.

Finally, the District Court found that the City Council's
resolution of intention to annex did not describe plaintiffs'
property with sufficient particularity, but held that
plaintiffs were estopped from challenging the annexation for
lack of notice because (1) the annexation process was initiated
by the plaintiffs, (2) because the annexation was for the
plaintiffs' benefit, and (3) because the plaintiffs enjoyed
the benefit of water and sewer services for three years before
challenging the legality of the annexation ordinance.

"The general rule that property owners are estopped by
reason of a long-continued acquiescence to question directly

-9-

the validity of the extension of the boundaries of a municipality seems to be well-settled". 56 Am.Jur.2d Municipal Corporations §80, p. 134; see also, 101 A.L.R. 581. An explanation of the rule appears in Finucane v. Village of Hayden (Idaho 1963), 384 P.2d 236:

"The general rule which respondents seek to invoke is stated in McQuillin Municipal Corporations, 3rd Ed., Vol. 2, §7.09, in the following language, "If the elements of estoppel are present, the owners of land over which the municipal corporation has exercised the powers and functions of government for a long period of time will be estopped from questioning the location of the municipal boundaries.' Such rule has application even though the proceeding by which the municipal boundaries were extended are void, when by reason of lapse of time the municipal authority has been exercised and there has resulted changed conditions involving extensive public and private interests. State ex rel. West v. City of Des Moines, 96 Iowa 521, 65 N.W. 818, 31 L.R.A. 186.

"Such holdings are based upon public policy. Where a municipal corporation and the parties affected acquiesce in such action by the officials of the corporation, and transact business upon the theory that the land is located within the boundaries of the municipality it is in the interest of the general public that such a rule be applied."

Plaintiffs contend the City's requirement that property be annexed prior to extension of water and sewer services is tantamount to coercion and thereby renders principles of estoppel inapplicable to this case. However, plaintiffs have not considered section 11-1001(4), R.C.M. 1947, now section 7-13-4314 MCA which states:

"(4) Any person, firm or corporation receiving water or sewer service outside of incorporated city limits may be required by the city or town as a condition to initiate such service to consent to annexation of the tract of property served by the city or town. The consent to annexation is limited to that tract or parcel or portion of tract or parcel that is clearly and immediately and not potentially being serviced by the said water or sewer service."

Under the facts presented in this case, the District Court properly concluded that plaintiffs were estopped from challenging the legality of the annexation ordinance.

Remanded with directions.

_____
                                    Justice

We Concur:

_____
        Chief Justice

_____

_____

_____
        Justices

-11-